[S. F. No. 8801.    Department Two.—March 27, 1919.]

In the Matter of the Estate of WILLIAM J. HENRICHS,
Deceased.    ROBERT AHRENS, Appellant, v. EUCLID
ASTON et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — CLAIM OF HEIRSHIP BY GERMAN
CITIZEN — RIGHT TO CONTINUANCE UNTIL TERMINATION OF WAR.—
A native and citizen of Germany making claim to the entire estate
of a deceased person, as a relative in the fourth degree, as against
petitioners for the distribution of the estate to them as relatives
in the fifth degree, is entitled upon the hearing of the petition, to
a reasonable time in which to prepare and present his claim to heir-
ship, where he presents certificates and records in support of his
motion for a continuance, and it is an abuse of discretion to deny
such motion.    The hearing should be continued until after the
termination of the war between Germany and the United States.

[2] ID.—ALIEN ENEMY—RIGHT TO APPEAR IN PROCEEDING—TRADING
WITH THE ENEMY ACT.—Under section 7, subdivision b, of the
"Trading With the Enemy Act," passed by Congress on October 6,
1917, an alien enemy, regardless of whether he be considered a de-
fendant in a technical sense in such a proceeding, is entitled to
maintain his rights against an actual assault thereon.

APPEAL from a decree of the Superior Court of the City
and County of San Francisco distributing the estate of
a deceased person.  Thos. F. Graham, Judge.  Reversed.

The facts are stated in the opinion of the court.

Gustave Gutsch for Appellant.

True Van Sickle for Respondents.

WILBUR, J.—This is an appeal from a decree of distri-
bution by which the whole estate, consisting of $11,778.71 in
money, was distributed to the respondents, five children of
Anna Fredericksen Aston.  It is conceded that the distribu-
tees were related to the decedent in the fifth degree.  The
court finds that they were the grandchildren of decedent's pre-
deceased aunt, Maria Gertrude Ahrens Frederickson.  Robert
Ahrens claims to be a son of a brother of said Maria Gertrude
Ahrens Frederickson, and of decedent's mother, Anna Bernar-
dina Elisabeth Ahrens, thus being related in the fourth degree
and entitled to inherit the entire property of the decedent.
Both claim to be related to the decedent through his mother.
Among the papers of the decedent was a certificate of the
marriage of decedent's parents, certifying that ''Henrich
Gerhard Henrichs, single, born in Blexun, Oldenburg, 31
years of age, 337 Walker, tinsmith, and Bernhardine Arens,
single, 30 years of age, of Neuenkirchen, Oldenburg, 337
Walker Street, were married'' February 8, 1863, at the
German Evangelic Lutheran St. Matheus Church on Walker
Street, New York; a certificate of birth and baptism on
November 15, 1863, at New York, of a son of Henrich Ger-
hard Henrichs, 287 Eleventh Street, born in Blexen, Olden-
burg, and Anna Marie Bernhardine, *née* Arens, his wife, who
was baptized on February 18, 1864, and received the name
of Johann Wilhelm; and also the certificate of confirmation,
showing that Johann Wilhelm Henrichs was born on Novem-
ber 15, 1863, and was confirmed April 14, 1878, in the Evan-
gelic Lutheran St. Paulus Church of San Francisco.  The
last two certificates are of the birth and confirmation of the
decedent.

In connection with appellant's motion for a continuance
certain records were presented which it was contended estab-

lished appellant's relationship to the decedent. The record of baptisms of the Catholic Community at Nuenkirchen, Oldenburg, showed that Anna Bernardina Elisabeth Ahrens (also spelled Arens), was born on August 22d and baptized on August 24, 1831, daughter of Bernard Friedrich Ahrens (also spelled Arens), and Maria Gertrud, *née* Horstmann, shoemaker in Neuenkirchen, Oldenburg. It is claimed by appellant that Anna Bernardina Elisabeth, born August 24, 1831, is the mother of the decedent. The name is slightly different, the birthplace is the same, and the age and year different from that set forth in the marriage license and birth and confirmation certificates found among the papers of the decedent. The same record of baptisms of the 'Catholic church at Neuenkirchen showed two other children of the same parents, namely, Catharina Juliana Josephina, born April 15, 1827, and Maria Gertrud Elisabeth Ahrens, born January 25, 1830. The trial court found that Maria Gertrud Ahrens Frederickson was an aunt of the deceased and the grandmother of respondents. As tending to show that the above-named Bernard Friedrich Ahrens and his wife, Maria Gertrud, *née* Horstmann, were the maternal grandparents of decedent, we have not only the similarity of the name of one child, Anna Bernardina Elisabeth Ahrens, to the name of the mother of the deceased, as stated in the marriage and birth certificates found among the papers of the decedent, but also the fact that another child of the same parents, Maria Gertrud Elisabeth Ahrens, the grandmother of respondents, is shown by the record to be a sister of Anna Bernardina Elisabeth Ahrens, who is found by the trial court to be a sister of decedent. Assuming it to be established that Bernard Friedrich Ahrens, and his wife Maria Gertrud Horstmann, were the grandparents of decedent, appellant claims that his father, Clemens Joseph Ahrens, is their son and thus decedent's uncle. To establish this fact, he produces from the same church book of the Catholic Community of Neuenkirchen, Oldenburg, the certificate of birth of Clemens Joseph Ahrens, son of Johann Bernard Ahrens (also spelled Arens) and Anna Gertrudis Catharina, *née* Horstmann, his wife, shoemaker at Neuenkirchen, Oldenburg, on October 2, 1823. The name of the father is stated as *Johann* Bernard Ahrens instead of Bernard *Friedrich* Ahrens, and the name of the mother is stated as Anna

CLXXX Cal.—12

Gertrudes Catharina Horstmann Ahrens, instead of Maria Gertrudes Horstmann Ahrens. The names of the father have in common the name Bernard Ahrens, and of the mother, Gertrud (or Gertrudes) Horstmann Ahrens, while in both certificates the occupation shoemaker at Oldenburg is given for the father. In the certificate of marriage of appellant's father (1849) the latter's father's name is given as Bernard Ahrens, and not Johann Bernard Ahrens. It certifies that Clemens Joseph Ahrens, cigar-maker at Vlotho, is a son of Bernard Ahrens at Neuenkirchen, Oldenburg, 26 years old at the date of the marriage, February 18, 1849. This would correspond with the date of the birth (October 2, 1823), given in the birth record above quoted, and is significant in that the name ''Johann'' is omitted in giving the name of the father, which would indicate that although in 1823 the father went by the name of Johann Bernard, he later used the name Bernard. Appellant produced a certificate of the death of Joseph Clemens Robert Ahrens, cigar-maker at Vlotho, which stated that he died August 9, 1856, at the age of thirty-six years, one month and two days. Proof of the alleged relationship of appellant to decedent turned in large measure upon whether it could be shown that Johann Bernard Ahrens was the same person as Bernard Friedrich Ahrens. Similarity of names, residence, age and wife's name, tend to show that fact. Appellant moved for a continuance under the following circumstances: The administrator of decedent's estate filed his final account and petition for distribution May 21, 1917. The testimony of residents of San Francisco was introduced, tending to show that respondents were the only heirs of the decedent. This evidence consisted largely of declarations of the decedent and of the mother and grandmother of respondents. The case was continued from time to time at the request of the attorney who now represents the appellant. Finally, on September 11, 1917, counsel for appellant filed a written notice of appearance for the appellant, who claimed to be the sole heir of decedent. After several continuances for that purpose, having secured from Germany through the Swiss Legation, which represented the interests of the United States in Germany during the war, the certificates and affidavits of appellant used on the motion for a continuance, on November 23, 1917, a motion was made that the case be con-

tinued until after the termination of the war, or until appellant's inability to produce evidence was removed. The appellant is a native and citizen of Germany and has always been a resident thereof. It was stated in the affidavit that it would be impossible during the continuance of the war between Germany and the United States to secure full proof of the heirship of the appellant, but in connection with his application the various certificates above mentioned were presented to the court, together with the affidavit of the claimant that he was a first cousin of the decedent, giving in detail the family history showing that relationship. The motion for continuance was denied, and on April 1, 1918, the court distributed the property to the respondents. It being admitted that the respondents are related to the decedent in the degree in which they claim, the question presented at the trial was whether all other relatives of nearer degree were dead. The presumption that decedent left relatives nearer than the fifth degree is very strong. (Code Civ. Proc., sec. 1963, subd. 28; *People* v. *Roach,* 76 Cal. 294, [18 Pac. 407].) Respondents contend that the affidavits presented do not conform to the requirements of an affidavit for continuance, in that it is not shown what evidence could be secured. (Code Civ. Proc., sec. 595.) Even if we assume that this rule controls where we are dealing with the appellant's fundamental right to be heard, appellant does show the certificates and records above set forth and it is admitted that they are not certified so as to entitle them to be received in evidence, and their importance as evidence is not denied. If we concede the right of an alien enemy to appear in our courts, it is evident that the appellant could not properly prepare and present his case, based necessarily, as he states, upon the testimony of witnesses to be procured in Germany, while a condition of war existed between Germany and the United States. We will not undertake to pass upon the merits of appellant's claim upon the motion for continuance. Claiming to be the sole heir of the decedent, he desired an opportunity to present his evidence, and by the ruling of the court he was prevented from so doing. He does present record evidence which he believes shows his relationship and which, supplemented by proof, no doubt readily obtainable in time of peace, might fully establish his claim, or be met by proof which might readily defeat it. **[1]** Under these circumstances appellant was entitled to a reasonable time in which to prepare

and present his case, and this involved a continuance until peace was declared and communication with Germany reestablished. Respondents contend that appellant, an alien enemy, was not entitled to be represented by counsel or to appear in this litigation, and, therefore, claim the right to have the case decided solely upon the evidence presented by them. If their contention is sustained, it means that upon presenting *prima facie* evidence that all other kin in nearer degree and of the same degree as themselves are dead, they can secure title to property without having their witnesses undergo cross-examination, and in the absence of the conflicting claims and evidence of appellant. It is conceded, however, that an alien enemy has the right to appear in a case where he is made a defendant. Section 7, subdivision b, of "Trading With the Enemy Act," passed by Congress on October 6, 1917 (c. 106, 40 Stats. at Large, 416, [U. S. Comp. Stats. 1918, sec. 3115½d]), provides in that regard as follows: "Nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war. . . . And provided further that an enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him." Under our practice in a proceeding on distribution, by publication of the necessary notices, all the world is summoned to admit or deny the claims of heirship advanced by the petitioner. In this case, the petition for distribution, having been filed, notice of the hearing thereof having been given, the appellant was required to present his proof of heirship at the time fixed, failing in which he was bound by the decree, the effect of which, if he was the sole heir, was to divest his title to the estate and vest it in the distributees. The appellant could have waited—indeed, he desired to wait—until the war was over, before presenting his claim of heirship. But the act of the respondent heirs, against his wishes and desires, in presenting their petition and forcing the case to a hearing, followed by the decree in their favor, had the effect of depriving an alien enemy of his property without an opportunity to be heard. [2] It is unnecessary to consider whether or not the alien enemy was a defendant in an action at law or in equity in a technical sense, because it was evidently the purpose of Congress to permit an alien enemy to maintain his rights in the courts

of the country against an actual assault thereon, as in this case. (But see Code Civ. Proc., secs. 1063, 1716.)

If it should be the policy of the government to forfeit or otherwise dispose of the property of an alien enemy, then this property, if inherited by the appellant, is subject to such disposition, and the effect of the decree in this case was to deprive the United States Government of any relief with reference thereto. And in this connection it may be observed that the Trading With the Enemy Act was amended November 4, 1918, to provide (sec. 1, subd. c.) : "If the President shall so require any money or other property including . . . choses in action and rights and claims of every character and description . . . belonging to . . . an enemy . . . which the President after investigation shall determine . . . belongs or is so held, shall be conveyed, transferred, assigned, delivered or paid over to the alien property custodian, or the same may be seized by the alien property custodian, and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this act."

Under the extraordinary circumstances shown by the affidavits of appellant and of his attorney, it was an abuse of discretion to refuse the continuance.

The judgment is reversed, with instructions to continue the application for distribution of the estate until after peace is declared between Germany and the United States, and a reasonable opportunity has been thereafter granted to appellant to secure testimony upon which he relies to establish his claim to heirship.

Lennon, J., and Melvin, J., concurred.