Matter of the Estate of FREDERICK SCHAEFER, Deceased.

(Surrogate's Court, New York County, June, 1920.)

Accounting — when objections to account of testamentary trustees by alien property custodian sustained — executors and administrators — alien enemies — trusts — corporations.

> Upon objection to the retention by testamentary trustees of accumulated profits paid to them upon the distribution of the surplus earnings of a corporation, it appears from a decision of the Appellate Division affirmed by the Court of Appeals that the purchase price of $415 a share for the stock of the corporation bought by it from the trustees was part capital and part income, and $85 a share was decreed to be paid as income to one of the life beneficiaries who was successful upon successive appeals from a provision of a decree of the surrogate which held that the proceeds of the sale were all capital. When the decree of the surrogate was resettled this country was at war with Germany and the alien property custodian was the trustee in this country of another life beneficiary of income who had taken no appeal from the decree. *Held,* that no action having yet been taken to distribute the surplus income to said beneficiary, a motion by the alien property custodian, who had been given no notice of the resettlement of the decree, which as to the alien enemy had been left in its original form, to amend the decree so as to direct payment to him as such custodian, of the accumulated income at the rate of $85 a share of the stock, will be granted.

OBJECTIONS to the account of executors and trustees.

Fitch & Grant (Ashbel P. Fitch, of counsel), for executors and trustees.

Gabrielle S. Mulliner, for A. Mitchell Palmer, alien property custodian.

Alex Josephsson, for Albert Schaefer.

Thomas C. Patterson, special guardian for infants.

FOLEY, S.   Pursuant to the decision made in this matter on March 1, 1920 (110 Misc. Rep. 628), objections to the account of the executors and trustees have been filed by the alien property custodian representing Frau Von Burtenbach, one of the life beneficiaries. The questions raised by these objections are now before the court for decision.

The objections are to the retention by the trustees of accumulated profits which were paid to them upon the distribution of the surplus earnings of the F. & M. Schaefer Brewing Company.   Under the decision of the Appellate Division in *Matter of Schaefer*, 178 App. Div. 117; affd., 222 N. Y. 533, it was held that $415 per share paid to the trustees for this stock by the brewing company was part capital and part income, and pursuant thereto $85 per share was decreed to be paid to Albert Schaefer, one of the life beneficiaries, as income.   Scott, J., in the prevailing opinion of the court (at p. 121), in holding that these profits belonged to the beneficiary, said: "Otherwise, as pointed out by Cullen, J., in *Matter of Rogers* (22 App. Div. 428), the accumulated profits will go to the unlawful increase of the corpus of the estate and the enrichment of the remaindermen at the expense of the life beneficiary." This decision was upon an appeal taken by Albert Schaefer from a decree of this court which held that the proceeds of the sale were all capital.   No appeal was taken on behalf of Frau Von Burtenbach, although the interests of the two life beneficiaries were exactly similar.   No action has as yet been taken to

Surrogate's Court, New York County, June, 1920. [Vol. 112.

distribute the surplus income now in the fund of the Von Burtenbach trust, and the objectant here seeks to compel payment to him. The trustees received the moneys in question when the company purchased the shares of its capital stock under a resolution of its board of directors, which reads as follows: " *Resolved* that the corporation purchase from said Edward C. Schaefer and George C. Schaefer, individually and as trustees under the will of Frederick Schaefer, deceased, and from Annie D. Chatillon, the estate of George H. Chatillon and Rose K. Schertel Von Burtenbach 3,250 shares of the capital stock of this corporation at the price of $415 per share." The reference to Frau Von Burtenbach is to her individual holdings of stock apart from the trust. All this stock was purchased at the same time. The corporation itself, by making the distribution to the trustees, stamped upon it the nature of such payment as surplus income, to which the beneficiaries were entitled. The notice of appeal of Albert Schaefer was from a provision of the decree affecting both beneficiaries. The finding of the Surrogate's Court reversed by the Appellate Division referred to both life beneficiaries. The interest of these trustees as stockholders — and therefore of the *cestuis* of the trusts — is joint and not several, and this case comes within the rule laid down in *Matter of Union Trust Co.*, 219 N. Y. 537, viz.: where the parties constitute a class all of whom are necessarily affected to the same extent, an appeal by one which changes the decision of the lower court inures to the benefit of all others in the same class whether appealing or not. If the contention of the trustees is correct that the Von Burtenbach trust was separate and distinct from the Albert Schaefer trust, there is even greater reason to decree a distribution of surplus income. She admittedly raised no question on the prior accounting, and the de-

cree is not *res adjudicata* as to her present representa-
tive because the issue was not litigated. *Rudd* v. *Cor-
nell*, 171 N. Y. 114. *Bailey* v. *Buffalo Loan, Trust &
Safe Deposit Co.*, 213 N. Y. 525, 542, is exactly in
point: " The plaintiff, beneficiary of such fund, has a
continuing right to maintain such action as long as
any portion of the fund or the accumulations thereof
remain undisposed of and unaccounted for by the trus-
tee." I pointed out in the decision heretofore made
that the action of the trustees constituted an unlawful
accumulation of income in their hands and was abso-
lutely void (Pers. Prop. Law, § 16; *Matter of Rogers*,
22 App. Div. 428); that any increase of capital by
accumulation of income (except for the benefit of
infants) was against public policy, and that the stat-
ute can no more be violated by agreement of the par-
ties than by will, as it represents the public policy of
this state and is not a statute which interested par-
ties may disregard or waive. *Church* v. *Wilson*, 152
App. Div. 844; affd., 209 N. Y. 553; *Oakley* v. *Aspin-
wall*, 3 N. Y. 547; *O'Donoghue* v. *Boies*, 159 id. 87;
*Bailey* v. *Buffalo L. T. & S. D. Co.*, 213 id. 525. I also
pointed out that the funds are still under the control
of this court and no final distribution has been made.
Counsel for the trustees have called to the court's
attention the case of *Central Trust Co.* v. *Falck*, 177
App. Div. 501; affd., 223 N. Y. 706. I do not regard
that case as applicable here. A later case (*Carrier* v.
*Carrier*, 226 N. Y. 114) is authority for the decision
arrived at herein. The Court of Appeals therein
stated that a statute limiting the suspension of the
absolute ownership is an expression of the public
policy of the state, similar to the rule governing accu-
mulations of income, and neither the parties by con-
sent nor the court by its judgment can violate its
terms. Judge Cardozo, in his opinion, said (at p. 123):

Surrogate's Court, New York County, June, 1920.    [Vol. 112.

" By the judgment of the trial court a trustee has been in effect commanded to do what the statute says he shall not do. There was, of course, no such purpose, but this does not change the effect. The limitations of the trust deed have been restated. The court has instructed the trustee to follow them in his disposition of the property. It has not merely held aloof, and permitted the trusts to stand. It has given active aid in confirming and enforcing them. No consent of the parties can charge a court with such a duty.   *   *   * We are dealing with the duty of the trial court to adjudge, and of an appellate court to approve. Their path of duty, we think, is clear. They will not stir a step in aid of an illegal scheme (*Cont. Wall Paper Co.* v. *Voight & Sons Co.,* 212 U. S. 227)."

The case of *Central Trust Co.* v. *Falck, supra,* because of the special circumstances was distinguished from the established rule. The facts there were not at all similar to the facts here. In that case the trustees had been acting for nearly fifty years before the action was begun to declare the will invalid because it violated the statute against perpetuities. The accumulations were acquiesced in by Flora Rogers, the beneficiary, for thirty years. Meanwhile a large number of Surrogates' Court decrees and one judgment of the Supreme Court had been entered, and the prevailing opinion held that it was not fit at so late a day to direct a different disposition of the funds. The action there was in equity, and the long period of acquiescence constituted *laches*. In the case at bar, however, but a short time has elapsed. Where jurisdiction does not exist it cannot be conferred by consent. *Matter of Mondschain,* 186 App. Div. 528; *Oakley* v. *Aspinwall,* 3 N. Y. 547, 552.

The word " void," characterizing accumulations in section 16 of the Personal Property Law, must be con-

strued as it has been in other statutes. It has been repeatedly held that a *void* marriage cannot be legalized by consent, acquiescence of the parties or attempted validation of courts. *McCullen* v. *McCullen,* 162 App. Div. 599, 602; *Stein* v. *Dunne,* 119 id. 1; *Earle* v. *Earle,* 141 id. 611; *Davidson* v. *Ream,* 178 id. 362. A decree which attempts to legalize accumulations, which are prohibited by the legislature in equally vigorous language, was beyond the jurisdiction of this court and cannot stand.

Furthermore, it is argued by counsel for the trustees that Frau Von Burtenbach was made a party to the original appeal in the Appellate Division, that she appeared by her attorney, that she could have appealed in her own behalf and reaped the same benefit. But her attorney himself was a director of the Schaefer Company and knew intimately that the distribution was in part profits. After the reversal of the Appellate Division no steps were taken to have her share of the income paid. The decree of the surrogate was resettled on March 8, 1918, but the provisions with regard to the Von Burtenbach trust were left in the original form. To sustain this contention would defeat the purposes of the Trading with the Enemy Act. It would allow collusion between an enemy alien and a party from whom moneys might be due. *Kohn* v. *Kohn,* 264 Fed. Repr. 253. "A condition of war requires an immediate, even drastic action to prevent the use of enemy property against the government. To secure such action, the power to determine in the first instance whether property is or is not enemy property must necessarily vest in some person, and by this act that person is the president." *Biesantz* v. *Supreme Council, Royal Arcanum,* 106 Misc. Rep. 545. Under the provisions of " Trading with the Enemy Act " (§§ 7, 9), and the president's executive order

of February 28, 1918, the alien property custodian has power to determine what property is enemy owned, and to seize it if, after investigation, he is convinced that such property does belong to an enemy. *Garvan* v. *Certain Bonds, etc.,* 265 Fed. Repr. 477. In this matter he has demanded from the trustees of this estate the payment to him of the income, title to the money forthwith vested in him in December, 1917 (*Kohn* v. *Kohn, supra*), and this court is of the opinion that the amount should be paid to him. The possibility of war and the probable seizure of funds may have affected the parties in their conduct in this proceeding. These surmises are useful only as a possible explanation of a result which flouted and made nugatory a cogent judicial and statutory policy of this state.

Finally, the decision of the Appellate Division was the first declaration that part of the distribution was income. The rights of the parties were fixed, therefore, when that court made its new findings, which the Surrogate's Court, under the special circumstances here, was concluded by. *Matter of Housman,* 224 N. Y. 525; Code Civ. Pro. §§ 1317, 2754, 2763.

After the reversal of the Appellate Division, when the decree was resettled on March 8, 1918, the United States was at war with Germany, and the alien property custodian was the trustee in the United States of the property of the absent Frau Von Burtenbach. Her direct interest in the litigation was terminated. His status had been recognized by the trustees of the estate, and the sum of $4,059.67, income from the trust, had been previously paid to him on December 8, 1917. No notice of the resettlement of the decree was given to him, and consequently no opportunity to object was afforded. The objectant asks herein to amend this

decree.  These facts constitute sufficient cause (even without drawing the inference of fraud or collusion) for the court of its own motion to reopen that decree and amend its provisions to comply with the public policy of the state.  *Matter of Regan,* 167 N. Y. 338, 344.  The prior decrees are not, therefore, *res adjudicata,* for a valid final decree was not entered.

The statement of Mr. Justice Scott in his opinion in *Central Trust Co.* v. *Falck* that the beneficiary may enhance the corpus of the trust by voluntary contributions to it cannot apply here in view of the superior rights of the alien property custodian to receive such voluntary contribution in the hands of the trustees as the property of an alien enemy.

The report of the referee as to other issues is confirmed.  The objections of the alien property custodian are sustained, and a decree may be entered directing the trustees to make payment of the accumulated income at the rate of eighty-five dollars per share to him as custodian for Rose K. Schertel Von Burtenbach.

Decreed accordingly.