[S. F. No. 9565. In Bank.—May 17, 1921.]

## In the Matter of the Estate of C. BOSSE, Deceased.

[1] ESTATES OF DECEASED PERSONS—JUDGMENTS—RECITALS—JURIS-
DICTION.—Orders and decrees made by a court in probate pro-
ceedings need not recite the existence of facts, or the perform-
ance of acts, upon which the jurisdiction of the court or judge
may depend, but it is only necessary that they contain the mat-
ters ordered or adjudged, except as otherwise provided in the
statute, and every intendment is in favor of the decree.

[2] ID.—TRADING WITH THE ENEMY ACT—CESSATION OF HOSTILITIES—
ENFORCEMENT OF ACT—CONSTITUTIONAL LAW.—No constitutional
right of distributees of the estate of a deceased person is in-
fringed by the enforcement of the Trading With the Enemy Act
according to its terms, at any time prior to the ratification of a
treaty of peace, notwithstanding the actual cessation of hostilities.

[3] ID.—DECREE OF DISTRIBUTION—APPEAL—COMPLIANCE WITH TRAD-
ING WITH THE ENEMY ACT—PRESUMPTION.—On appeal from a
decree of final distribution in the estate of a deceased person,
where the decree, after adjudging that an individual and a corpo-
ration, both residents of Germany, were entitled to the whole
estate subject to the rights of the alien property custodian under
the Trading With the Enemy Act to whom the property is ordered
delivered, in view of the fact that every intendment is in favor
of the decree, it must be presumed that the alien property cus-
todian, who, the decree shows, was represented by counsel when
distribution was ordered, had regularly appeared in the pro-
ceeding and made any or all demands and given all the notice
essential under the Trading With the Enemy Act in the manner
provided by the act.

[4] ID.—DECREE OF DISTRIBUTION—DISTRIBUTION TO ALIEN PROPERTY
CUSTODIAN.—A decree of distribution in the estate of a deceased
person which "distributes" property, which it determines alien
enemies are entitled to, to the alien property custodian, to be held,
administered, and accounted for by him, as provided by law and
by the decree defining the rights of the parties in interest, is not
erroneous, and is in substantial accord with the requirements of
the act.

---

2. Rights and liabilities of aliens as affected by war, notes,
Ann. Cas. 1917C, 189, 227; Ann. Cas. 1917E, 484; Ann. Cas. 1918C,
709, 741; Ann. Cas. 1918D, 583, 601.

Right of alien enemy to take by inheritance or by will, note, 11
A. L. R. 156.

[5] ID.—JUDGMENT—JURISDICTION OF PROBATE COURT.—The contention that the superior court is without power to incorporate a provision in a decree of final distribution in the estate of a deceased person, distributing property to which it is determined alien enemies are entitled, to the alien property custodian to be held, administered, and accounted for by him, as provided by law and the decree, on the theory that the functions of the superior courts in probate matters are limited to an ascertainment of the heirs, legatees, and devisees, and a distribution to them, or to other persons to whom such heirs, legatees or devisees may have conveyed their interests, cannot be maintained.

APPEAL from a decree of final distribution of the Superior Court of Sonoma County. Thos. C. Denny, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gustav Gutsch for Appellant.

John S. Partridge, Garret W. McEnerney, John K. M. Ewing and V. K. Butler, Jr., for Respondent.

ANGELLOTTI, C. J.—This is an appeal from a part of the decree of final distribution in the matter of the estate of C. Bosse, deceased, which was given and made May 7, 1920. By this decree Mary Bosse, mother and sole heir at law of the deceased, a resident of Bremen, Germany, and a public corporation named the Reichsausschuss der Kriegsbeschaedigten-und Kriegshinterbliebenenfuersorge, organized for the purpose of dispensing funds for war sufferers and having its principal place of business at Berlin, Germany, were adjudged to be entitled to the whole of the residue of the estate, consisting entirely of personal property, the respective interests being fully defined and specified, subject to the rights of Francis P. Garvan, as alien property custodian, under and by virtue of the terms of an act of Congress known as the Trading With the Enemy Act, approved October 6, 1917 (40 U. S. Stat. 411), as amended November 4, 1918 (40 Stat. 1020, [Fed. Stats. Ann. (1919), p. 355; U. S. Comp. Stats. (1919), secs. 3115½a–3115½j]). This appeal is taken by such public corporation from the further portion of said decree which is as follows:

"And it is further ordered, adjudged and decreed that all the money and property to which the said Marie Bosse, and the said" public corporation "are entitled under the terms of this decree, be, and the same are hereby distributed to the said Francis P. Garvan as such Alien Property Custodian, to be held, administered, and accounted for by said Alien Property Custodian as provided by law and as provided for by this decree defining the interests of the said Marie Bosse and the said" public corporation "therein; and that the said executor be and he is hereby ordered and directed to deliver to said Alien Property Custodian, the estate so distributed." It is claimed that this portion of the decree was unauthorized. The record on appeal brought here by appellant consists solely of the decree and the notice of appeal.

[1] We must consider the points made by appellant in the light of the statutory provisions that orders and decrees made by the court in probate proceedings "need not recite the existence of facts, or the performance of acts, upon which the jurisdiction of the court or judge may depend, but it shall only be necessary that they contain the matters ordered or adjudged, except as otherwise provided" (Code Civ. Proc., sec. 1704), and of the rule that every intendment is in favor of the decree. It must now be taken as settled, in view of the decisions of the United States supreme court (see *Hamilton* v. *Kentucky Distilling Co.*, 251 U. S. 146, [64 L. Ed. 194, 40 Sup. Ct. Rep. 106]), that at the time this decree was made a state of war still existed between this country and Germany, notwithstanding the cessation of actual hostilities, and that, at least in so far as any provision thereof material here is concerned, the provisions of the Trading With the Enemy Act were still in force and effect. It should be noted that, among other acts of Congress, "the act known as the Trading With the Enemy Act . . . and all amendments thereto," and all proclamations issued under the authority conferred by such act, were expressly excepted from the effect and operation of the joint resolution terminating wartime acts adopted by Congress March 3, 1921. The act itself provided that it shall remain in full force until "the end of the war," which is defined in the act to mean "the date of proclamation of exchange of ratifications of the treaty of peace, unless the President shall, by proclamation, declare a prior date."

[2]   We see no force whatever in the suggestion that any
constitutional right of appellant is infringed by the enforce-
ment of the Trading With the Enemy Act according to its
terms, at any time prior to the ratification of a treaty of
peace, notwithstanding the actual cessation of hostilities.
The courts may not lawfully refrain from enforcing the
registered will of the legislative and executive departments
of the government in this matter, if such departments have
not exceeded the power conferred upon them by the consti-
tution.

The enemy alien character of appellant is apparent on the
face of the decree.   [3]   Upon the record, in view of the fact
that every intendment is in favor of the decree, it must be
presumed that the alien property custodian, who, the decree
shows, was represented by counsel when distribution was or-
dered, had regularly appeared in the proceeding and made
any or all demands and given all the notice essential under
the Trading With the Enemy Act in the manner provided
by the act.

We have seen that the decree as given fully adjudicated
and defined the right of appellant with regard to the prop-
erty to which it was entitled, subject to the rights of the
alien property custodian under the Trading With the Enemy
Act, with the result that in any subsequent proceeding on
the part of appellant for accounting and delivery of the prop-
erty, appellant's rights as absolute owner, subject only to the
provisions of the act, stand judicially declared.   As to this
no complaint is made.   [4]   The claim of error is solely as
to the subsequent portion of the decree which "distributes"
such property to which appellant is so entitled to such alien
property custodian to be held, administered, and accounted
for by him as provided by law and as provided by the decree
defining appellant's interest.   It appears plain to us that
this portion of the decree is in substantial accord with the
requirements of that act and the proclamation of the Presi-
dent thereunder.   The act provides, section 6, for an alien
property custodian "who shall be empowered to receive all
money and property in the United States due or belonging to
an enemy . . . , which may be paid, conveyed, transferred, as-
signed or delivered to said custodian under" its provisions.
By section 7, subdivision c, it is provided that "if the Presi-
dent shall so require," any money or property belonging to

or held for an enemy not holding a license granted by the President under the act, "shall be conveyed, transferred, assigned, delivered or paid over to such custodian, or may be seized by him, to be held, administered and disposed of as provided in the act." By section 12 it is provided that all moneys received by such custodian shall be deposited in the treasury of the United States, and that all other property so received shall be held and administered by him as a common law trustee; and that after the end of the war any claim of an enemy to any money or property so received and held shall be settled as Congress may direct. By executive order of October 12, 1917, the President vested in the alien property custodian the executive administration of all the provisions of section 7, subdivision c, including the power and authority conferred upon him to require the conveyance, transfer, assignment, etc., of any money or property belonging to or held for any enemy. By executive order of February 26, 1918, it was provided that such custodian might make demand for any such conveyance, etc., and that when such demand is made and notice given as provided, "such demand and notice shall forthwith vest in the Alien Property Custodian such right, title, interest, and estate in and to and possession of the money or other property demanded, and such power or authority thereover as may be included within the demand." The plain effect of these provisions was to require the superior court in any distribution of appellant's interest that it might make, to assign the same to the alien property custodian, in view of the demand made and notice given, which we must assume, to be held and accounted for by him as provided in the act, properly guarding in the decree all the right of the appellant in relation thereto. This appears to be recognized by all the authorities to which our attention has been called. (See *In re Kelly*, 101 Misc. Rep. 495, [167 N. Y. Supp. 256]; *Estate of Gregg*, 266 Pa. 189, [109 Atl. 777]; *Matter of Schaefer*, 112 Misc. Rep. 308, [182 N. Y. Supp. 732]; *Keppelmann* v. *Palmer* (N. J.), 108 Atl. 432.) In *Youghiogheny etc. Co.* v. *Krsiak et al.*, 171 Wis. 347, [176 N. W. 855], involving awards by the state Industrial Commission in favor of alien enemies in which the commission ordered the awards paid to the alien property custodian, the court said: "We cannot doubt . . . that the Alien Property Custodian, under his appointment by the

President, became vested with an interest and qualified title to the moneys and property so acquired and invested him with substantial rights and interest to the exclusion of the enemy.'' We think the right of the alien property custodian to such a disposition of the property on distribution as will give him full control of the property for the purposes of the act is fully recognized by what is said in *Estate of Henrichs,* 180 Cal. 175, 181, [179 Pac. 883].

[5] We are of the opinion that there is no substantial force in the claim that, in view of our statute, the superior court was without power to incorporate this provision in its decree. The contention to the contrary is based upon the theory as to the limited function of superior courts in probate matters, under our state statutes. It is claimed that thereunder the court on distribution is limited to an ascertainment of the heirs, legatees, and devisees, and a distribution to them, or to other persons to whom such heirs, legatees, or devisees may have conveyed their interests. The provision is, in substance, but a recognition of the interest of the representative of the government in the property under the terms of the Trading With the Enemy Act, which interest gives to him the right of possession for the purposes of the act, accompanied by a direction that such possession be given. The objection of appellant is based upon the theory of a special and limited jurisdiction vested by our state law in superior courts in the transaction of probate business. The provision complained of is in substance but an award of the possession of the property otherwise adjudged by the court to belong to the appellant to the proper representative of the government for the purposes of the Trading With the Enemy Act, and, in our opinion, was such a provision as the court was required by such act to make if it undertook to then finally distribute the property of the estate. Any distribution which did not guard the interest of the United States in the matter would be in substantial violation of the provisions of that act. (See *Estate of Henrichs,* 180 Cal. 175, 181, [179 Pac. 883].) The decree as made fully recognized and adjudged the rights of appellant as required by our statute, and the award of the possession of the property in the hands of the executor to the alien property custodian for the purposes of the Trading With the Enemy Act was simply in conformity with requirements of an act of Congress adopted

in the valid exercise of its war power, to which all courts in the land, state as well as federal, must conform. This view is fully sustained by the authorities hereinbefore cited. The decree is affirmed.

Shaw, J., Olney, J., Wilbur, J., Sloane, J., Lennon, J., and Lawlor, J., concurred.