## Gregg's Estate.

*Alien enemy property — Trading with the Enemy Act — De-
cedents' estates — Wills — Enemy — Residence—Failure of devise
or bequest—Act of June 7, 1917, P. L. 408—Acts of Congress of
Oct. 6, 1917, 40 Stat. 411; Nov. 4, 1918, 40 Stat. 1020, and March
28, 1918, 40 Stat. 460.*

1. The Trading with the Enemy Act of Congress of Oct. 6,
1917, as amended by the Act of March 28, 1918, does not prevent
the vesting of any interest in property, within the jurisdiction of
the United States, in an alien enemy, through the instrumentality
of a will taking effect after the passage of the act.

2. The Trading with the Enemy Act is not for confiscation of
property, but rather for its conservation. While it may be taken
by the government for its own purposes, the owner does not part
absolutely with it, for after the end of the war his claim to it
"shall be settled as Congress shall direct."

Corbett v. Nutt, 77 U. S. 464, applied.

3. Mere residence in a territory of a nation with which the
United States is at war makes the resident an enemy.

4. Where a mother dies after the Trading with the Enemy Act
of October 6, 1917, has become effective, and leaves a will by which
she gives to her three daughters the residue of her estate, the share
of a daughter, a resident of the City of Hamburg, Germany, and
an alien enemy, will be distributed to the Alien Property Custo-
dian, and not to the other two daughters.

5. In such a case a claim that the share of the alien daughter
should be distributed to her two sisters under the terms of section
15 of the Act of June 7, 1917, P. L. 408, cannot be sustained.

Argued October 21, 1919.  Appeals, Nos. 132 and 133,
Oct. T., 1919, by A. J. Kelly, Jr., and T. H. B. Mc-
Knight, Trustees, and Elizabeth Denny Gregg, from de-
cree of O. C. Allegheny Co., Feb. T., 1919, No. 230, dis-
missing exceptions to adjudication in Estate of Bessie
Denny Gregg.  Before BROWN, C. J., MOSCHZISKER,
FRAZER, WALLING and KEPHART, JJ.  Affirmed.

Exceptions to adjudication.

From the record it appeared that at the audit the alien
property custodian claimed the share of Murtie Gregg

Haller in the decedent's estate on the ground that Mrs. Haller was at the time of her mother's death, a resident of Germany and an alien enemy under the Trading with the Enemy Act. The auditing judge allowed the claim. The residuary legatees filed exceptions. The facts appear by the opinion of the Supreme Court.

The exceptions were dismissed in an opinion by TRIMBLE, J.

A. J. Kelley, Jr., et al., Trustees, and Elizabeth Denny Gregg appealed.

*Errors assigned* were dismissal of exceptions.

*Frederic W. Miller,* with him *Dalzell, Fisher & Dalzell* and *Gordon Fisher,* for appellant.—Congress in exercise of the war power conferred upon it by the Constitution has by the passage of the Trading with the Enemy Act prevented the vesting of any interest in personal property within the jurisdiction of the United States in an alien enemy through a will taking effect after the passage of the act: Delaney v. United States, 249 Fed. Rep. 625; Miller v. United States, 11 Wall. 268. Such interest must vest in the residuary legatees.

*J. E. MacCloskey, Jr.,* with him *Francis Goertner* and *Spier Whitaker,* for appellee.—The act in general affirms the common law: Williams v. Paine, 169 U. S. 70; New York Life Ins. Co. v. Davis, 95 U. S. 425; Kershaw v. Kelsey, 100 Mass. 561.

Under the common law an alien enemy may take property by bequest or devise: Fairfax v. Hunter, 7 Cranch 603.

The mere declaration of war, without any legislative enactment, does not change the foregoing principles nor act as a confiscation of property of an enemy: Brown v. U. S., 8 Cranch 110.

Under the statutory law of Pennsylvania, an alien may take real estate and personal property by devise and

bequest and the possibility of such property being sequestrated was contemplated in the act of the assembly.

The construction contended for by the appellants is contrary to the spirit and purpose of the act as a whole: Kohlsaat v. Murphy, 96 U. S. 153; Harris v. Runnels, 12 How. 79.

A bequest or a devise to an enemy is not literally within the prohibition of the Trading with the Enemy Act.

The acts of trading prohibited by the Trading with the Enemy Act are not void as between private parties or against any other party than the United States and are merely voidable by the United States: Corbett v. Nutt, 77 U. S. 464.

OPINION BY MR. CHIEF JUSTICE BROWN, January 5, 1920:

Bessie Denny Gregg, a resident of Pittsburgh, this State, died there March 22, 1918. By her will dated August 25, 1913, she thus disposed of her estate: "I direct that all my estate, real, personal and mixed, of every nature and kind whatsoever, shall be divided into three parts, one part to go to my daughter, Elizabeth Denny Gregg, one part to my daughter, Martha McMurtie Gregg Haller, and the third part to be held in trust for my daughter, Ellen McKnight Gregg Ker, for and during the term of her natural life, and after her decease, to be held in trust for her child or children until they shall all arrive at the age of twenty-one years, when the said share is to be divided equally between them. Or if all her children should die before reaching the age of twenty-one years and without issue, then the said share so held in trust shall be divided equally between my two other daughters." By an undated memorandum, in the nature of a codicil, she distributed certain articles of jewelry among her three daughters. At the time of her death war had been declared between the government of the United States and the German Empire, and

the Trading with the Enemy Act, passed October 6, 1917, was in force. Mrs. Haller is, and was at the time of her mother's death, a resident of the City of Hamburg, Germany, and was an alien enemy under the Trading with the Enemy Act. The alien property custodian made demand upon the executors of her mother for her share in the estate, in accordance with the provisions of the act of Congress. The demand was in proper form, and, at the audit of the account of the executors, the claim of the alien property custodian was presented and allowed. The other two daughters—Elizabeth, in person, and Ellen, through her trustees—claimed that the disposition made by their mother for their sister Martha, was void, and demanded that her share in the estate be paid to them in accordance with the terms of the Act of Assembly of June 7, 1917, P. L. 408, section 15 (c), of which provides: "Unless a contrary intention shall appear by the will, such real or personal estate, or interests therein, as shall be comprised or intended to be comprised in any devise or bequest in such will contained, which shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law, or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest, if any, contained in such will. In any case where such devise or bequest which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue." From the disallowance of their claim and the award of the share of the daughter Martha to the alien property custodian, we have these appeals by the two daughters.

The term "enemy" is thus defined by section 2 (a) of the Trading with the Enemy Act: "Any individual, partnership, or other body of individuals, of any nationality,

resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory." It is to be noted that mere residence in a territory of a nation with which the United States is at war makes the resident an enemy. That Mrs. Haller is an alien enemy is conceded.

Section 3 of the act under consideration provides "That it shall be unlawful—(a) For any person in the United States, except with the license of the President, granted to such person, or to the enemy, or ally of enemy, as provided in this act, to trade, or attempt to trade, either directly or indirectly, with, to, or from, or for, or on account of, or on behalf of, or for the benefit of, any other person, with knowledge or reasonable cause to believe that such other person is an enemy or ally of enemy, or is conducting or taking part in such trade, directly or indirectly, for, or on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy." The words "to trade" are declared by section 2 of the act to mean, inter alia, "(d) Buy or sell, loan or extend credit, trade in, deal with, exchange, transmit, transfer, assign, or otherwise dispose of, or receive any form of property." It is under this clause that the appellants contend that the bequest and devise to Mrs. Haller are void. Section 7, subsection (c), as amended November 4, 1918, provides: "If the President shall so require, any money or other property......owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or so held, shall be conveyed, trans-

ferred, assigned, delivered, or paid over to the alien property custodian." The demand of the alien property custodian was made upon the executors of the testatrix in pursuance of the requirement of the President, and if the decree of the court below is affirmed, he will take what has been awarded to him under the provision of paragraph 4, section 12, of the act, as amended by the Act of March 28, 1918, which is as follows: "The alien property custodian shall be vested with all of the powers of a common law trustee in respect of all property, other than money which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this act, and, in addition thereto, acting under the supervision and direction of the President, and under such rules and regulations as the President shall prescribe, shall have power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof." By paragraph 6 of section 12 of the Act of October 6, 1917, 40 Stat. 424, it is provided: "After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the alien property custodian or deposited in the United States Treasury, shall be settled as Congress shall direct."

The Trading with the Enemy Act is not for confiscation of property. It is rather for its conservation. While, if the President so directs, the money or property of an alien enemy may be taken by the government for its own purposes, the owner does not part absolutely with it, for after the end of the war his claim to it "shall be settled as Congress shall direct"; but the construction which the appellants would have us give to the act would make it confiscatory for the benefit of private in-

dividuals. Nothing could be more foreign to its purpose. If the money awarded by the decree of the court below to the alien property custodian should be awarded to the appellants, it would pass to them absolutely, with Mrs. Haller's right to it extinguished. If, however, it is paid to the custodian, she can make claim to it at the end of the war, and her claim will be settled by congressional action.

The money claimed by the alien property custodian is held by the executors of the testatrix for Mrs. Haller, and, but for the claim made by him, it would be paid by them to her in accordance with the direction of her mother's will. The act of Congress does not declare such direction to be void, but, assuming that it may have been an unlawful testamentary disposition under the clause defining the meaning of the words "to trade," and under which the appellants claim the money, as to whom are the bequest and devise unlawful? Nothing is to be found in the act of Congress declaring the testatrix's disposition of one-third of her estate to her daughter Martha void, and if it is unlawful, it is so only as to the government of the United States, and then only after the President has so determined. By his license he might permit Mrs. Haller to receive the money.

The question before us arises under a federal statute, and that the appellants have no standing as claimants to the share of Mrs. Haller in their mother's estate is to be regarded as settled by the highest federal judicial authority. An act of Congress passed July 17, 1862, was entitled "An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels and for other purposes." The sixth section provided that if any person within any state or territory of the United States, being engaged in armed rebellion against the United States, or aiding or abetting such rebellion, should not, within sixty days after public warning and proclamation duly given and made by the President of the United States, cease to aid, countenance and

abet such rebellion, and return to his allegiance to the United States, all the estate and property, moneys, stocks and credits of such person should be liable to seizure, and it was made the duty of the President to seize and use them, or the proceeds thereof. The act further declared, "all sales, transfers, or conveyances of any such property, after the expiration of the said sixty days from the date of such warning and proclamation, shall be null and void; and it shall be a sufficient bar to any suit brought by such person for the possession or the use of such property, or any of it, to allege and prove that he is one of the persons described in this section." While the foregoing enactments were in force, Mrs. Louisa Hunter died in April, 1863, seized of a tract of land situated in Alexandria County, Virginia, and by her will devised it to W. D. Nutt, in trust for an adopted daughter, and a niece. Prior to the war Mrs. Hunter resided in that county, but after its occupation by the forces of the United States she went within the Confederate lines and remained there until her death. In 1865 Nutt, the trustee named in her will, brought ejectment to recover possession of the property devised to him in trust, it being at that time in the possession of one W. P. Corbett. He defended on the ground that, by the act of Congress of July 17, 1862, the devise was absolutely void, and there could be no recovery. The trial court refused to so hold, and the judgment entered for the plaintiff was affirmed by the Supreme Court of Appeals of Virginia. On appeal by Corbett to the Supreme Court of the United States, the judgment was affirmed and it was said: "If the devise of Mrs. Hunter can be brought within the language of this last section, it must be because a devise is embraced within the terms 'sales, transfers, and conveyances'; and because her 'aiding and abetting' the rebellion, and her refusal to return to her allegiance to the United States, are legitimate and necessary inferences from her voluntary and continued residence within the Confederate lines, for there is no

direct evidence on either of these latter points, nor any evidence tending to establish either of them except such voluntary residence. Assuming, however, that a devise is within the 'sales, transfers, and conveyances' invalidated by the act, and that Mrs. Hunter is within the category of persons for whom the warning and proclamation of the President were intended, we are of the opinion that the invalidity declared is limited and not absolute; that it is only as against the United States that the 'sales, transfers, and conveyances' of property liable to seizure are null and void; and that they are not void as between private persons, or against any other party than the United States. The object of the provisions cited is manifest. It is declared, in express terms, to insure the speedy termination of the existing rebellion. The confiscation of the property of persons engaged in the rebellion, and the appropriation of it, or its proceeds, to the support of the army of the United States, were supposed to have a tendency to advance that object. The seizure of the property of particularly designated classes, and of others engaged in the rebellion, or aiding and abetting it, who should not heed the public warning and proclamation of the President, was therefore directed, as also the institution of proceedings required in the courts of the United States for its condemnation and sale. It was to prevent these provisions from being evaded by the parties whose property was liable to seizure that 'sales, transfers, and conveyances' of the property were declared invalid. They were null and void as against the belligerent or sovereign right of the United States to appropriate and use the property for the purpose designated, but in no other respect, and not as against any other party. Neither the object sought, nor the language of the act, requires any greater extension of the terms used. The United States were the only party who could institute the proceedings for condemnation; the offense for which such condemnation was decreed was against the United States, and the property

condemned, or its proceeds, went to their sole use.   They alone could, therefore, be affected by the sales": Corbett v. Nutt, 77 U. S. 464.   By the Act of 1862 all sales, transfers and conveyances of property by an insurgent, after having been warned by the President of the United States to cease countenancing and abetting the rebellion, were declared to be null and void, and absolute confiscation followed.   No such drastic provisions are found in the Trading with the Enemy Act of 1917, and what was said of the right of the government alone to take under the former act applies with greater force to the latter.

The assignments of error are all overruled and the decree is affirmed at the costs of the appellants.