---

## IN RE SHAFER'S ESTATE.

### (209 N. W. 355.)

(File No. 5581.    Opinion filed June 19, 1926.)

1. **War—Alien Enemies—Bequest to German Legatees While Country Was at War With Germany Held Not Void Because of Trading With the Enemy Act, but Property Passed Even if Unlawfully (Rev. Code S. D. 1919, § 717; U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a-3115½j).**

In view of Rev. Code S. D. 1919, § 717, bequest to German legatees, in will executed and becoming effective while country was at war with Germany, held not void as against others than the United States because of Trading With the Enemy Act (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a-3115½j), and property passed even though unlawfully.

**2. War.**

Possession by testator's heirs of property willed to alien enemies does not give heirs right thereto.

**3. Judgment—Jurisdiction.**

To uphold a judgment obviously erroneous, jurisdiction of court to render it must be clear.

**4. War—Notice.**

Notice by publication to alien enemy is not valid service thereof.

**5. War.**

Mailing notice of hearing on final report of executors 10 days theretofore to German legatees at address 50 years old held not valid service of notice.

**6. Wills.**

To adjudicate validity of bequests, court must have before it parties adversely interested.

**7. War.**

To adjudicate validity of bequest to alien enemies, court must have jurisdiction of alien property custodian, so that he may defend rights of government and of aliens, in view of Trading With the Enemy Act, § 12, par. 4 (40 Stat. 423).

**8. War—Notice.**

Under Trading With the Enemy Act (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a-3115½j), jurisdiction cannot be obtained over alien property custodian by constructive notice of possession by executors of property bequeathed to alien enemies.

**9. Judgment — Erroneous Ex Parte Adjudication of Rights of Legatees of Whom Court Had No Jurisdiction Held Void, and Subject to Be Vacated Without Relegating Injured Party to Right of Appeal (Rev. Code 1919, § 3470).**

Ex parte order, erroneous on its face, declaring certain bequests void without having jurisdiction of legatees, held void, and subject to be vacated without relegating party to right of appeal only, under Rev. Code 1919, § 3470.

---

Note.—See, Headnotes (1), (2), (7), and (8), American Key-Numbered Digest, War, Key-No. 12, 40 Cyc. 323; (3) Judgment, Key-No. 7, 33 C. J. Sec. 34 (Anno); (4) and (5) War, Key-No. 12, 40 Cyc. 329; (6) Wills, Key-No. 267, 40 Cyc. 1262; (9) Judgment, Key-Nos. 16, 338, 33 C. J. Sec. 35, 34 C. J. Sec. 492.

Appeal from Circuit Court, Spink County; Hon. Alva E. Taylor, Judge.

In the matter of the estate of Fritz Shafer, deceased. From an order of the county court, refusing to set aside an order construing the will and distributing the estate, affirmed by the circuit court, certain alien legatees, objecting to the order of distribution, appeal. Reversed and remanded.

*Campbell & Fletcher,* of Aberdeen, and *Hunt & Swiger,* of New York City, for Appellants.

*John M. Erwin,* of Redfield, for Respondent.

BURCH, C. This action is brought to determine the rights of certain legatees, residents and citizens of Germany, named in the will of Fritz Shafer. The will was made, and the death of the testator occurred, while this country was at war with Germany; the date of the will being April 23, 1918, and the death of the testator September 4, 1920. On September 15, 1920, the will was filed for probate in the county court of Spink county, and thereafter Pauline W. Bastian and Charles J. Boub, executors named therein, were granted letters testamentary. On August 29, 1921, said executors filed their final report showing a balance in their hands bequeathed to the said German legatees amounting to about $35,000. The final report alleged that the said German legatees were not lineal descendants of the testator; that there were two sons residing at Frankfort, S. D., and two daughters residing at Redfield, S. D., lineal descendants, who were citizens of the United States; that the bequests made to the German legatees were void because of the alien enemy law of the United States known as the Trading with the Enemy Act (U. S. Comp, St. 1918, Comp. St. Ann. Supp. 1919, §§3115½a-3115½j), and asked that the provision of the will as to the said German legatees be declared void and the residue of the estate be dstributed to the said sons and daughters. The county court fixed the 14th day of September, 1921, at the hour of 10 o'clock a. m., as the time for hearing thereon, and by order required notice to be given by posting copies of the order in three of the most public places in Spink county and by mailing copies thereof to each of the German legatees in Germany at the addresses shown in the petition at least 10 days prior to the date fixed for hearing. On the day fixed for hearing, September 14, 1921, the court made its order and judgment interpreting the will, held the said bequests void, and ordered a distribution of

the estate to the said sons and daughters. This order was not made final until November 7, 1921, to enable the settlement of inheritance tax, at which time the court made another order adjudicating the inheritance tax, and decreeing that the order of September 14th be made final as of that date. None of the German legatees appeared in these proceedings and it is conceded that none of them received the notice mailed to them before the 1st day of October of said year. There are numerous legatees in Germany and no appearance was made or action taken by any of them until the 27th day of July, 1922, when a petition to vacate the final decree was filed, on behalf of all, in the said county court of Spink county and an order to show cause thereon issued by the said county court returnable on the 21st of August, 1922. On the hearing the county court denied the motion and refused to vacate the order construing the will and distributing the estate. An appeal was taken from this order of the county court to the circuit court of Spink county, and on the 8th day of October, 1923, the said circuit court rendered judgment affirming the action of the county court. This appeal is from the order and judgment of the circuit court affirming the action of the county court.

[1, 2] There are but two questions to be determined on this appeal: First, were the bequests made to the German legatees void because of the Trading With the Enemy Act; and, second, if such bequests were not void, may the said legatees proceed by motion in the county court to vacate said judgment and order holding the bequests void and distributing the estate to the sons and daughters; or is such judgment and order conclusive against them because they did not appeal from the order within the time provided by law?

Counsel for respondents, in his brief, says:

"It will be noted that the bequest was a gift pure and simple. The beneficiaries were not heirs, and were not entitled to receive any part of the estate by succession. The testator as a citizen of the United States could not lawfully have made a gift of money or property to enemy aliens. To give to an enemy would constitute treason. Can the gift by will be any less an aid and comfort to the enemy?

"Appellants cite cases in which bequests to enemy aliens

have been sustained, but in each case that I have been able to examine the benficiary was an heir and entitled to inherit and the will did not enlarge the share of such heir, but, on the contrary, the will operated to restrict the inheritance to the income from the share or otherwise incumber. the succession. I find no case in which a pure gift by will has been sustained."

But respondents do not cite any case where such gift has not been sustained. This seems, however, to be the most serious ques-tion before the court. If such will was absolutely void and nothing passed by it, it follows that such portion of the estate was not disposed of by will and was subject to inheritance by the heirs. But in the case of Corbett v. Nutt, 77 U. S. (10 Wall.) 464, 19 L. Ed. 976, in construing a more drastic law of the Civil War, the Supreme Court of the United States said:

"We are of the opinion that the invalidity declared is limited and not absolute; that it is only as against the United States that the 'sales, transfers, and conveyances' of property liable to seizure are null and void; and that they are not void as between private persons, or against any other party than the United States."

It would hardly be contended that one in possession of prop-erty unlawfully conveyed to an alien enemy could keep it, without other right than the fact of its unlawful transfer by the owner. Does a different rule prevail as to wills? The property belonged to the testator and did not pass until his death, then all passed either by will or succession. If the will was not void as against the heirs, the property disposed of by will passed to the legatees, unlawfully perhaps, but, nevertheless, it passed to the legatees. It was not forfeited to third parties, in whose possession it might happen to be The mere fact that such persons might be heirs of the testator did not give them title unless the property was inherited by them. They inherited only such property as was not disposed of by will. If the will was void only as to the United States, then it was not void as to the heirs, and the property so willed was subject to seizure by the alien property custodian as alien owned property, to be dealt with as Congress might direct.

There is no statutory law of the state prohibiting inheritance by aliens, but, on the contrary, "aliens may take in all cases, by succession, as well as citizens. * * *" Section 717, R. C. 1919.

In the case of In re Gregg Estate, 266 Pa. 189, 109 A. 777, it is held that the Trading With the Enemy Act is not violated by a bequest to an alien enemy and that such bequest is valid. That case was taken by petition for writ of certiorari to the United States Supreme Court and the writ denied, April 19, 1920. Respondents attempt to distinguish between this case and the Gregg Case because the will in this case was made during the war, while in the Gregg Case the will was made before the war. In both cases the death of the testator occurred during the war. Property does not pass by will until the death of the testator. We can see no reason why the distinction suggested should change the rule announced in the Gregg Case. No such distinction is suggested therein, and in that case it is said:

"The Trading With the Enemy Act is not for confiscation of property. It is rather for its conservation. * * * The act of Congress does not declare such direction to be void, but, assuming that it may have been an unlawful testamentary disposition under the clause defining the meaning of the words 'to trade,' and under which the appellants claim the money, as to whom are the bequest and devise unlawful? * * * If it is unlawful, it is so only as to the government of the United States, and then only after the President has so determined. By his license he might permit Mrs. Haller to receive the money."

See, also, In re Kieslemark's Will, 188 Iowa, 1378, 177 N. W. 690, 11 A. L. R. 156; In re Bosse, 185, Cal. 666, 200 P. 412.

[3-5] Respondents' principal contention is that the error of the county court was one of law, subject to be corrected only on appeal, since, under section 3470, R. C. 1919—
"such decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal."

The record before the county court on its face shows that the judgment is not supported by the facts. The facts found show that the legatees named in the will have a vested right to the property in the hands of the executors, and that the distributees have no right. If a judgment so obviously erroneous must be upheld, the jurisdiction of the court to render it must be clear. There was no appearance by the parties nor acquiescene therein. Neither

was there any actual notice to them; if any notice, it was purely constructive. Conceding that the proceedings are in rem and notice may be constructive, as far as can be done within the limits of the statute, it would seem that justice requires the giving of the notice in a manner most likely to effect actual notice, with sufficient time to such parties to be heard after receipt of the notice. It needs no argument that a notice mailed to the legatees in Germany at an address 50 years old, 10 days before the hearing, could be of no avail to the German legatees. At the time of filing the petition for probate this country was at war with Germany. As to the legal effect of notice to alien enemies, the Supreme Court, in the case of Dean v. Nelson, 10 Wall. (77 U. S.) 158, 19 L. Ed. 926, says:

"The defendants in the proceedings (the appellees here) were within the Confederate lines at the time, and it was unlawful for them to cross those lines. * * * A notice directed to them and published in a newspaper was a mere idle form. They could not lawfully see nor obey it. As to them, the proceedings were wholly void and inoperative."

[6-8] In Dorr v. Gibboney, Fed. Cas. No. 4006, a notice of publication directed to an alien enemy was called a "Mockery of Justice" and was held absolutely void. See, also, Lasere v. Rochereau, 17 Wall. (84 U. S.) 437, 21 L. Ed. 694; Livingstone v. Jordan, Fed. Cas. No. 8415; Selden v. Preston, 11 Bush (Ky.) 191; Rockold v. Belvins, 6 Baxt, (Tenn.) 115; Walker v. Day, 8 Baxt. (Tenn.) 77; Haymond v. Camden, 22 W. Va. 180. No notice by publication could be legally given to the German legatees, during the war. But it was not necessary that proceedings in this case be delayed until such time as valid service could be made on the aliens; the act invoked to defeat the bequests provides for a custodian of alien owned property. On the filing of the petition to probate the will and of the final report there was property prima facie belonging to alien enemies, over which the United States government had control and of which it could take possession through the alien property custodian  If there was a question as to the validity of the bequests, before the validity could be adjudicated it was necessary that the court have before it the parties adversely interested, in this case the alien property custodian, so that he might defend the rights of the government and

of the aliens.  Section 12, par. 4, of the Trading With the Enemy Act as originally enacted (40 Stat. 423), provided that the Alien Property Custodian should protect and manage the property of alien enemies in the United States—

"to the end that the interests of the United Stattes in such property and rights or of such person as may ultimately become entitled thereto, or to the proceeds thereof, may be preserved and safeguarded."

In the amendment of March, 1918 (U. S. Comp. St. 1918, Comp. St. Anr. Supp. 1919, § 3115½ff), these words were omitted, but the act provided that the Alien Property Custodian should manage the property, and exercise any rights or powers with respect thereto "in like manner as though he were the absolute owner thereof."

The subsequent history of the act nowhere indicates that confiscation was intended, but the proceeds were to accrue to the interest of the owner, subject to the rights of the government and the direction of Congress.  The Trading With the Enemy Act required the executors having in their custody alien owned property to "report the fact to the Alien Property Custodian by written statement under oath" within 30 days after coming into possession.  U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919. § 3115½d.  Under this act constructive notice was not sufficient to bring the said custodian within the jurisdiction of the court, since by its express provisions notice in writing must be given.  In the case of Carter v. Frahm, 31 S. D. 379, 141 N. W. 370, we held:

"The administration of an estate under probate jurisdiction of a court, culminating in final decree of distribution, is a proceeding in rem, and, while the court need not have jurisdiction of the persons of heirs, it is essential that constructive notice to them be given as prescribed by law, to give the court jurisdiction over the subject-matter."

The court not having power to bring the alien enemies into court by publication of the notice of probate and failing to bring the custodian of their property before the court in the manner provided by law, it acquired no jurisdiction over the subject-matter of the interest of the aliens, and as to them the ex parte adjudication of their rights was without jurisdiction and void.

What then, is the remedy of the legatees? Respondents claim by appeal only. No doubt a void judgment may be vacated by the appellate court on appeal, but we do not think this can be made the only remedy for relief from a judgment void on the face of the record. In some instances it might be ignored and attacked collaterally when sought to be enforced, and we can see no reason why, when the judgment stands in the way of the aggrieved party so that he may not obtain his rights because of it, he may not apply to the court rendering the judgment and have it vacated. In Paul v. Paul, 41 S. D. 383, 170 N. W. 658, we held that courts of record, such as probate and county courts, have inherent power, independent of statute, to vacate their own judgments that have been procured by extrinsic fraud, and that the provision of our Code that a decree of distribution "is conclusive as to the rights of heirs, * * * subject only to be reversed, set aside, or modified on appeal" has no application to a proceeding to vacate a decree of distribution on the ground of fraud or mistake. An ex parte adjudication of the rights of a party not served with process, and without appearance or notice, is as much a miscarriage of justice, as where the adjudication is procured by extrinsic fraud, and there is no more chance for an orderly determination of the rights of the parties by trial and appeal than in case of fraud. The court has the same inherent right to vacate such void judgment.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings in harmony herewith.

CAMPBELL, J., not sitting.