## VON SCHWERDTNER v. PIPER et al.

District Court, D. Maryland. January 14, 1928.

No. 1197.

**1. Citizens ⬾3—Alien's son, born in United States, was "citizen."**

One born in United States, whose parents were aliens, and whose father entered active service in German army in World War, was United States "citizen."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen.]

**2. War ⬾12—Seizure of property of alien entering German army in World War was lawful, and Alien Property Custodian was authorized to exercise powers of absolute owner until Congress directed otherwise (Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1 [Comp. St. § 3115½d]; § 12, as amended by Act March 28, 1918, § 1 [Comp. St. § 3115½ff]).**

Seizure of property of subject of Germany, who entered active service in German army

in World War, leaving wife and child in United States, was lawful, under Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1 (Comp. St. § 3115½d), and under Act Oct. 6, 1917, § 12, as amended by Act March 28, 1918, § 1 (Comp. St. § 3115½ff), his interest in land was ended, and Alien Property Custodian was given authority to exercise all rights or powers of absolute owner, at least until Congress should otherwise direct, as, for instance, as provided in section 12, par. 6.

**3. War ⬾12—Rights of resident wife of German subject, joining German army in World War, in property seized, were not confiscated by seizure, wife not being declared enemy (Trading with the Enemy Act 1917, § 2 [Comp. St. § 3115½aa]; § 7, as amended by Act Nov. 4, 1918, § 1 [Comp. St. § 3115½d]).**

Where property of German subject, joining German army during World War, was seized under Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1, (Comp. St. § 3115½d), rights of his wife, residing in United States and not having been proclaimed by President as an enemy of United States, did not fall within class of persons whose property was subject to confiscation under Act Oct. 6, 1917, § 2 (Comp. St. § 3115½aa), and whatever rights she had in the property were not confiscated by seizure.

**4. War ⬾12—Statute relating to return of property seized during World War should be construed liberally (Trading with the Enemy Act 1917, § 9 [g] as amended [Comp. St. § 3115½e]).**

Trading with the Enemy Act 1917, § 9 (g), as amended by Act June 5, 1920, and Act March 4, 1923, § 1 (Comp. St. § 3115½e), relating to return of enemy's property seized by government during World War, must be given liberal construction.

**5. War ⬾12—Legal representative of deceased enemy alien may bring proceeding to recover enemy's real property, seized during World War (Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1 [Comp. St. § 3115½d]; § 9 [g], as amended [Comp. St. § 3115½e]).**

Under Trading with the Enemy Act 1917, § 9 (g), as amended by Act June 5, 1920, and Act March 4, 1923, § 1 (Comp. St. § 3115½e), legal representative of deceased alien enemy, whose property has been seized under Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1 (Comp. St. § 3115½d), may bring proceeding to recover real property, as well as personal property.

**6. War ⬾12—Citizen, whose alien father's property was seized during World War, could recover only his share under deceased father's will, where deceased mother did not apply for citizenship in time to come within statute (Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1 [Comp. St. § 3115½d]; Comp. St. § 3115½e).**

Where German subject left wife and son in United States, and joined German army during World War, and property was seized under Trading with the Enemy Act 1917, § 7, as amended by Act Nov. 4, 1918, § 1 (Comp. St. § 3115½d), and father died in Germany on

April 15, 1921, leaving will, and mother, who later died had become United States citizen but applied too late to come within terms of Act March 4, 1923, § 1 (Comp. St. § 3115½e), amending Trading with the Enemy Act 1917, § 9 (a), (g), as amended by Act June 5, 1920, son was entitled to recover from government only the share devised to him in father's will, since on father's death will became operative, and son's rights were only such as were acquired by reason of death of his father.

In Equity. Suit by Ernst Ottomar Von Schwerdtner, as administrator c. t. a. of the will of Friedrich Jonathan Von Schwerdtner, deceased, against Charlotte Stryker Piper and another. Decree in accordance with opinion.

Coleman, Fell, Morgan & Brune, of Baltimore, Md., for plaintiff.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for defendant Sutherland.

SOPER, District Judge. The bill of complaint in this case is brought by Ernst Ottomar Von Schwerdtner, as administrator c. t. a. of the will of his father, Friedrich Jonathan Von Schwerdtner, against Howard Sutherland, the Alien Property Custodian, and Charlotte Stryker Piper, the executrix of the will of Anna Katharina Von Schwerdtner, the wife of the said Friedrich Jonathan Von Schwerdtner, and mother of the said Ernst Ottomar Von Schwerdtner. The purpose of the suit is to establish the right, title, and interest of the said Ernst Ottomar Von Schwerdtner in his individual capacity to 229 acres of land on the Severn river in Anne Arundel county, Maryland. The case depends particularly upon the provisions of sections 9a and 9g of the Act of March 4, 1923, 42 Stat. 1511 (Comp. St. § 3115½e), which amended Trading with the Enemy Act Oct. 6, 1917, 40 Stat. 411, c. 106, as amended by Act June 5, 1920, 41 Stat. 977.

[1] Friedrich Jonathan Von Schwerdtner, a subject of Germany, resided in 1914 in Anne Arundel county, Maryland. He went to Germany in August of that year, and entered active service in the German Army in the World War, leaving his wife and Ernst, his only child, in the United States. Friedrich was then the owner of the land in question. He never returned to the United States, but died in Germany on April 15, 1921, leaving a last will and testament, which was duly admitted to probate by the orphans' court of Anne Arundel county. By his will he appointed his wife as sole executrix; but as she, being then an alien, was not qualified to act, letters of administration with the will annexed were granted by the orphans' court

to his son, who, having been born in this country, is a citizen of the United States.

[2, 3] Prior to the death of the testator, it was determined that he was an enemy of the United States by the Alien Property Custodian, who thereupon seized the land and has since held it. It is clear that the seizure was lawful under the provisions of section 7 of the Trading with the Enemy Act of 1917, as amended by the Act of November 4, 1918, 40 Stat. 1020 (Comp. St. § 3115½d), and that thereby, under the provisions of section 12 of the Act of 1917, as amended by the Act of March 28, 1918, 40 Stat. 460 (Comp. St. § 3115½ff), the interest of Friedrich Jonathan Von Schwerdtner in the land was ended, and the Alien Property Custodian was given the authority to exercise all the rights or powers of an absolute owner—at least until Congress should otherwise direct—as, for instance, after the end of the war, as provided in the sixth paragraph of the original act. 40 Stat. 424; U. S. v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131; Munich Reins. Co. v. First Reins. Co. (C. C. A.) 6 F.(2d) 742. Anna Katharina Von Schwerdtner, however, being a resident of the United States, and not having been proclaimed by the President of the United States as an enemy thereof, did not fall within the class of persons whose property was subject to confiscation. See section 2 of the Act of 1917 (Comp. St. § 3115½aa). Hence whatever rights she may have had in the property in question were not confiscated by the seizure described.

By the will of Friedrich Jonathan Von Schwerdtner, all of his property, except a legacy of $1,500, was devised and bequeathed to his wife and his son, share and share alike; the son's share to be held in trust for him by his mother until October 8, 1919, when he would come of age. Anna Katharina Von Schwerdtner, the mother, continued to be a resident of Anne Arundel county. After November 11, 1918, she filed her declaration of intention to become a citizen of the United States. She was admitted to citizenship on August 18, 1925. She died on January 10, 1926, leaving a last will and testament, which was admitted to probate by the orphans' court of Anne Arundel county. Letters testamentary were granted to Charlotte Stryker Piper, the executrix named in the will. It provided that, after the payment of debts and funeral expenses, all of the property, including the interest of the testatrix in the land in question, should be sold, so that distribution of the estate might be made in cash. Various legacies were be-

queathed to persons living in the United States and in Germany.

On March 25, 1926, Ernst Ottomar Von Schwerdtner, acting under the provisions of section 9a and section 9g of the Trading with the Enemy Act, as amended by the act of 1923, claimed title as heir at law to the whole of the land which had been seized, and made application to the President, as required by law. The President having failed to act upon the application, this suit was brought to establish the right, title, and interest of the said Ernst to the whole of the property, and to secure the conveyance thereof to him by the Custodian. The theory of the plaintiff is that, his mother being dead, he is the sole heir at law of his father; that, the land having been confiscated by the United States during his father's lifetime, title thereto did not pass under his will, but remained in the Custodian; that by section 9g of the act of 1923, provision is made for the recovery from the Custodian of the right, title, or interest in property of a citizen of the United States which has devolved upon him by reason of the death of the person from whom it was seized, unless citizenship was acquired by naturalization proceedings instituted after November 11, 1918; that his mother is barred, since she took no step toward naturalization until after that date, and hence he should be granted the whole of the property, to the exclusion of her estate.

Section 9g of the act, as amended by the act of 1923, is as follows:

"The legal representative (duly appointed by a court in the United States) of a person, deceased, whose money or other property has been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, may (if not entitled to proceed under subsection (d) of this section) proceed under subsection (a) for the recovery of any interest, right, or title in any such money or other property which has, by reason of the death of such person, become the interest, right, or title of a citizen of the United States, unless such citizenship was acquired through naturalization proceedings in which the declaration of intention was filed after November 11, 1918. Such legal representative shall give a bond, in a penal sum and with sureties satisfactory to the President or the court, as the case may be, conditioned that he will redeliver to the Alien Property Custodian all such money or other property not distributed to such citizen, or, if deceased, to his heirs or legal representatives."

Congress has clearly manifested by this section an intention to mitigate the hardships imposed by the seizure of enemy property, and to restore it under certain conditions and restrictions to persons claiming under the original owner. There was some discussion in the argument of the case as to whether there was a complete confiscation of the property upon its seizure, so that the United States became the absolute owner thereof, or merely an appropriation and use by the United States in the prosecution of the war; the rights of all persons in the property, subject to this paramount power, being preserved in the meantime, so that, if the government should finally relinquish its control, the rights of the original owners in what should remain would immediately attach. See Gregg's Estate, 266 Pa. 189, 109 A. 777; Corbett v. Nutt, 10 Wall. (77 U. S.) 464, 19 L. Ed. 976.

It is not necessary to decide that question here. It is immaterial whether the provisions of section 9g are to be considered as directing a reconveyance of the property under the conditions named, or a relinquishment of the government's control; for, if the seizure completely put an end to all right and title of the enemy in the property for all purposes, the section must be so construed as to confer upon those claiming an interest in the property by reason of the death of the enemy the same rights which they would have enjoyed had the seizure not taken place, subject, of course, to the lawful use and disposition by the United States in the meantime. Otherwise, the section would be nugatory and of no effect, for no right or title could pass to any one by reason of the death of the enemy, if during his lifetime his interest had been forfeited.

[4, 5] It is well settled that this section must be given a liberal construction. Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265; Reising v. Deutsche, etc. (C. C. A.) 15 F.(2d) 259. See, also, Sturchler v. Sutherland (D. C.) 19 F.(2d) 999. The United States, indeed, concedes that such a construction must be given to the statute, and does not seriously contest the right of the son to recover the one-half share in the property which was devised to him by his father. Attention is called to the provision of section 9g, whereby the legal representative of the deceased person is the one empowered to proceed for the recovery of the property, and it is suggested that ordinarily the authority of a legal representative extends only to personal property, and does not include real property. The point, however, is not

pressed, and is not in any event entitled to weight, since the section relates, not only to money, but to property generally, and no good reason can be given for the relinquishment by the United States of its claim upon one kind of property and the retention by it of another.

[6] Anna Katharina, the claimant's mother, did not apply for citizenship in time to come within the terms of section 9g, but it does not follow that the son is entitled to the whole property. His rights were only such as were acquired by reason of the death of his father. He can recover only to the extent that his father's interest in the property became his interest by reason of the father's death. When that event took place, the will of the father became operative, whereby one-half only of the land was devised to the son and one-half to the wife. The United States, by the act of 1923, has signified its consent to the return of the one-half interest of the son, since he is a citizen of the United States; but at the same time it has indicated with equal clearness that the interest of the mother, who did not declare an intention to become a citizen before November 11, 1918, should not be relinquished, but should be retained by the government. Whether the legatees of the mother have any rights under the act of 1923 is not before the court in this action, and no opinion is expressed.

Even if it be assumed that the will of the father was ineffective to transfer title, because of the forfeiture subsisting at the time of his death, and that the son was clothed by the act of 1923 with the rights of an heir of an intestate, the provisions of article 46, § 1, and article 93, § 126, of the Maryland Code, would govern, and he would be entitled to a two-thirds interest only in the property. But there is nothing in section 9g to show that the will of an enemy should not be given validity against every one except the United States. Congress was legislating with reference to the death of the owner and the consequent devolution of title, and must have had in mind the common incident of a will, as well as statutes of inheritance. Had it intended to exclude testamentary disposition, it would have so declared. Furthermore, if, as may be the case, Congress intended from the beginning to declare the title of seized property forfeited only as to the United States, and with this important exception to preserve the rights of the owner, then unquestionably the will of the father in this case was valid and effective. See the decision of the United States Supreme Court

23 F.(2d)—55

on the Confiscatory Act of July 17, 1862 (12 Stat. 589), in Corbett v. Nutt, supra.

A decree will be signed, directing the Alien Property Custodian to convey an undivided one-half interest in the land to Ernst Ottomar Von Schwerdtner.